IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BENJAMIN MARK SMITH,

              Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

Case No. 1:17-cv-00348-AC

OPINION AND ORDER

---

TIM WILBORN
P.O. Box 370578
Las Vegas, NV 89137
      Of Attorney for plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
RENATA GOWIE
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

ALEXIS L. TOMA
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
      Of Attorneys for defendant

ACOSTA, Magistrate Judge:

Benjamin M. Smith ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is reversed, and this case is remanded for payment of benefits.

## Procedural Background

Plaintiff applied for DIB on October 8, 2015, alleging disability as of November 1, 2013, due to posttraumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), cervical degenerative joint and disc disease, low back strain, bilateral knee patellofemoral syndrome, and right upper extremity radiculopathy. (Tr. 77-78.) His application was denied initially and upon reconsideration. (Tr. 77, 93.) A hearing convened on May 13, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 47-76.) On September 8, 2016, the ALJ issued a decision finding plaintiff not disabled. (Tr. 27-39.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this court. (Tr. 1-3.)

## Factual Background

Born on March 2, 1980, plaintiff was 33 years old on the alleged onset date of disability and 36 years old on the date of the hearing. (Tr. 77, 93.) Plaintiff is a high school graduate and attended two years of college, completing an associate's degree in auto mechanics. (Tr. 204.)

## Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards

and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to

preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

### The ALJ's Findings

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 29.) At step two, the ALJ found plaintiff had the following severe impairments: mild TBI; PTSD; mild lumbar and cervical degenerative disc disease; mild bilateral knee osteoarthritis; migraines; obesity; a somatic symptom disorder; depression; and right shoulder dislocation. *Id.*

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of a number of impairments that are so severe as to preclude substantial gainful activity. (Tr. 30.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected her ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

[He can] perform light work . . . except he can lift 20 pounds occasionally and 10 pounds frequently . . . sit, stand and/or walk for six hours in an eight-hour day . . . occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds . . . occasionally stoop, kneel, crouch, but never crawl . . . occasionally reach overhead with the bilateral upper extremities . . . must avoid concentrated exposure to noise greater than SCODOT level III . . . must avoid concentrated exposure to vibrations and workplace hazards . . . can understand, remember, and carry out simple, routine, and repetitive tasks that can be learned in 30 days or less . . . can tolerate no public contact . . . can tolerate only occasional incidental coworker contact with no group tasks . . . can tolerate only occasional supervisor contact . . . requires a low stress job (defined as one requiring only occasional changes in work setting and duties, and no conveyor belt paced work).

(Tr. 32.)

At step four, the ALJ found plaintiff was not capable of performing his past relevant work as an auto mechanic or diesel tech. (Tr. 37.) At step five, the ALJ found that plaintiff retained the capacity to perform the following representative occupations: laundry folder, street cleaner helper, and routing clerk. (Tr. 38.) Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 38-39.)

*Discussion*

Plaintiff argues that the ALJ: (1) improperly assessed his symptom allegations; (2) erroneously rejected the Veteran's Administration ("VA") rating; (3) erroneously rejected the opinion of an examining physician; (4) improperly rejected lay witness testimony; and, therefore, (5) failed to carry the burden of proof at step five.

I. Symptom Allegations

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

At the hearing, plaintiff testified that he can no longer work because of pain in his neck, which also extends down the length of his spinal cord to his lower back. (Tr. 59.) Plaintiff also endorsed significant PTSD arising from his military service in Iraq, which he explained is exacerbated by his physical pain, and leads to explosive outbursts and nightmares. (Tr. 59-61.) Plaintiff further explained that he experiences extreme fatigue at times, numbness, lack of strength, poor memory due to his TBI, and migraine headaches. (Tr. 64-65.) Plaintiff expressed that his daily activities are relatively minimal, and revolve around getting his children to and from school and doing chores around the house when he is not too fatigued. *Id.* Plaintiff stated that he lives in a small town in order to avoid people. (Tr. 69.) The ALJ determined plaintiff's allegations were not

fully credible for three reasons: (1) inconsistency with the medical record; (2) conservative treatment; and (3) inconsistency with his reported activities of daily living. (Tr. 35.) Plaintiff' assignments of error focus upon the ALJ's evaluation of the credibility of his alleged symptoms of mental impairment.

Plaintiff's first contention is that the ALJ erred in finding that his PTSD symptoms were inconsistent with mental status examinations of record. The ALJ determined that despite his allegations Plaintiff "generally demonstrated normal mood and affect, normal motor activity, normal orientation, normal judgment, normal thought content and normal routine social interaction, as well as no suicidal or homicidal ideation." (Tr. 34, 334, 414, 417, 463, 477, 481.) Citing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), plaintiff argues the ALJ erroneously cherry-picked the administrative record for instances of waning psychological symptoms in order to reach an adverse credibility finding. In response, the Commissioner asserts that *Garrison* is inapposite because there, the nature of Garrison's mental impairment — bipolar disorder — was characterized by periods of waxing and waning symptoms, whereas plaintiff does not have bipolar disorder.

Considering the record as a whole, although the parties' references to *Garrison* are not particularly probative regarding waxing and waning symptoms, a parallel exists to *Garrison*'s admonition that ALJs must avoid isolating evidence in support of a denial while ignoring contrary evidence. Here, plaintiff's primary contention is that the ALJ failed to properly evaluate the severity of his PTSD symptoms in fashioning his RFC. The ALJ supported his credibility finding on the issue by citing mental status examinations for cognitive impairment. *See* (Tr. 34, 334, 414, 417). For instance, in the context of a cognitive assessment related to TBI in July 2014, plaintiff was found to have normal judgment, social interaction, orientation, motor activity, normal visual-spacial

orientation, no neurobehavioral effects, and normal consciousness. (Tr. 334-35.) However, at a later exam, plaintiff was noted to display a dysphoric mood with flat affect, rambling, and tangential, circumstantial speech. (Tr. 340.) He was also noted to be angry at times, and "[a]ppeared to be on edge, sitting in the chair with his fists clenched. (Tr. 340.) His clinical indicators of PTSD included symptoms of depression, anxiety, suspiciousness, panic attacks, chronic sleep impairment, memory loss, flattened affect, and impaired impulse control. (Tr. 341.) He was found to meet every one of two-dozen diagnostic criteria for PTSD. (Tr. 338-39.) The two examiners, a licenced clinical social worker ("LCSW") and a clinical psychologist, concluded in June 2015 that plaintiff had "severe" impairment in working cooperatively with co-workers, supervisors, and the public; understanding instructions, communicating effectively, maintaining concentration on work tasks, and sustaining a regular work schedule. (Tr. 342-45.) Thus, the ALJ demonstrably ignored the negative findings from the examination she cited and instead focused on the most benign findings in the assessment.

Similarly, the ALJ's citation to and reliance upon a mini-mental status examination in November 2014 is not clear and convincing. The treating doctor and a treating nurse practitioner noted plaintiff was oriented and alert, as well as demonstrating normal affect. (Tr. 477, 481.) However, the purpose of that clinical visit was to treat plaintiff for an abscess on his shoulder, not to explore the degree of impairment plaintiff demonstrates in working with co-workers, supervisors, and the public, or the degree to which plaintiff is capable of maintaining employment. Accordingly, the ALJ's findings were not clear and convincing because they simply do not demonstrate that plaintiff's PTSD symptoms are inconsistent with his allegations; indeed, despite the credibility finding, the ALJ found that plaintiff has "marked" difficulties in social functioning. (Tr. 31.) Finally, although the ALJ impugned plaintiff's credibility based on a lack of evidence of suicidal or

homicidal ideation, the finding was inapposite because plaintiff did not make any such allegation. (Tr. 34).

Plaintiff's next contention is that the ALJ erred by finding that his symptom allegations were undermined by conservative treatment. For example, the ALJ noted that plaintiff did not take psychiatric medications for PTSD, and that he reported to the VA that although he was having PTSD-related symptoms, he was coping as well as he could. (Tr. 33, 35.) An ALJ may discount allegations of severe impairment which are inconsistent with minimal, conservative treatment. *Burch v. Barnhart*, 400 F.3d 1111, 1114 (9th Cir. 2005). However, as the Commissioner concedes, the ALJ never made any explicit finding that Plaintiff's PTSD allegations were impugned by his failure to seek more aggressive treatment, or his reluctance to take psychiatric medication to treat the condition. Def.'s Br. 7-8 ("[T]he ALJ did not discredit Plaintiff's mental allegations on the basis of the treatment record or his failure to seek treatment."). Accordingly, to the extent the ALJ implied that plaintiff's failure to take medication undermined his mental symptom complaints, the finding was not clear and convincing.[1]

Third, the ALJ found that despite his PTSD allegations, plaintiff participated in a range of daily activities including caring for his children and household animals, preparing simple meals and going to the store, fished, went for walks, and was able to provide detailed medical histories to providers. (Tr. 35.) The ALJ, however, failed to explain in any detail how the activities described contradicted any specific allegations, which is insufficient. *See, e.g., Dodrill v. Shalala*, 12 F.3d 915,

---

[1] The court acknowledges that the ALJ made explicit findings regarding conservative treatment related to plaintiff's physical allegations, including his spine condition and migraine headaches, which plaintiff does not contest. (Tr. 33-34.)

918 (9th Cir. 1993) (ALJ must state which testimony is not credible and provide a specific evidentiary basis); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (th Cir. 2017) (the ALJ must explain with specificity how an activity conflicts with testimony). The Commissioner argues, *post hoc*, that the ALJ's finding was appropriate because although plaintiff testified to difficulty sitting for extended periods and occasional loss of feeling and strength in his upper extremities, plaintiff was nonetheless able to fish, go on walks, and the examining doctor reported plaintiff's hands exhibited hallmarks of heavy use. However, the court cannot affirm an adverse decision on grounds raised *post-hoc*.

The Commissioner argues these are not *post hoc* arguments, citing a footnote from *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) ("The Commissioner is not asking this court to invent a new ground of decision . . . ."). Here, however, the ALJ did not identify *any* evidentiary grounds for her finding; rather, she simply listed reported activities and declared generally that those activities contradicted plaintiff's allegations. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Therefore, any additional activities that the Commissioner argues support the ALJ's grounds for rejecting testimony are also insufficient. An ALJ must identify contradictory testimony — blanket statements are simply insufficient. Thus, the dictum in *Warre* is unavailing.

Finally, the ALJ found plaintiff did not leave his last job due to his impairments, but rather because he was "not interested in returning to work due to 'stupid people.'" (Tr. 35.) The finding, however, was not clear and convincing because plaintiff's most substantial impediment to returning to work is his marked limitation in social functioning. Tr. 31. Moreover, the Commissioner

concedes that it "may be true" that plaintiff's statement about "stupid people" simply reflects his mental impairment. Def.'s Br. 9. The court is therefore satisfied that even though plaintiff quit his job, the anti-social features of his mental impairment likely played a definitive role in ending his employment.

The Commissioner contends that plaintiff's arguments do not contemplate the entirety of his testimony, and particularly that plaintiff waived his right to dispute the ALJ's findings regarding "the physical record." *See* Def.'s Br. 6, 10. Accordingly, argues the Commissioner, the ALJ's credibility assessment should be affirmed in full. Although the court agrees that plaintiff has waived his right to dispute his allegations regarding his physical impairments, based on the foregoing, the court concludes that the ALJ did not provide any valid clear and convincing reasons to discount plaintiff's allegations regarding his mental impairments, and therefore the finding as to plaintiff's mental allegations was not based on substantial evidence. Nonetheless, based on this precedential case law, the court must affirm the ALJ's overall credibility finding, because at least one of the ALJ's rationales for discounting plaintiff's allegations was clear-and-convincing; namely, the findings regarding plaintiff's physical allegations which plaintiff does not contest. Accordingly, the ALJ's errors in evaluating the veracity of plaintiff's mental symptoms must be deemed harmless.[2] *Batson*,

---

[2] The ALJ in this case divided her credibility analysis into two distinct parts: first she discussed the physical allegations and corresponding evidence, then she discussed the mental allegations and the corresponding evidence. In the context of lay witness testimony, it is error for an ALJ to discount the entirety of a lay witness's testimony where the ALJ divides the testimony into distinct parts and finds only one part inconsistent with the medical record. *Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016). Here, the ALJ essentially divided plaintiff's testimony into two distinct parts but provided rationales sufficient only to discount one part. However, because *Dale* a lay-witness's testimony, the court declines to apply *Dale's* principle to the credibility analysis of a plaintiff, although plaintiff's mental symptoms are dispositive of this case and therefore the ALJ's errors arguably constituted harmful error.

359 F.3d at 1197; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

II. VA Rating

Ninth Circuit case law effective at the time of the ALJ's decision directs that "an ALJ must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Even so, because "VA and SSA criteria for determining disability are not identical . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record. *Id.* In this case, the VA determined plaintiff's PTSD was 70% disabling, migraine headaches were 30% disabling, cervical disc disease was 20% disabling, right radiculopathy was 20% disabling, low back strain was 10% disabling, and left knee issue was 10% disabling. (Tr. 177-81.) Thus, the VA concluded plaintiff was entitled to "individual unemployability" based on his service-connected disabilities. (Tr. 178.)

The ALJ determined that plaintiff's VA rating was "of little probative value" in her decision. (Tr. 36.) The ALJ found that the VA rating was based on plaintiff's reports that he held several jobs that only lasted for a month or two, his self-reported migraine headaches, and physical disabilities that precluded strenuous labor. *Id.* The ALJ explained that although the VA gave plaintiff a 100% disability rating,[3] it did not assess the "Paragraph B" criteria (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation), did not provide a function-by-function analysis of plaintiff's capabilities, and did not evaluate whether plaintiff could return to his past relevant work or perform other work in the national economy. *Id.*

Based on a careful review of the VA findings and the record, the ALJ did not provide

---

[3] The ALJ's recitation of the facts was not completely accurate: the VA assigned an overall rating of 90%, but nevertheless determined plaintiff was unemployable. (Tr. 178, 181.)

persuasive, specific, valid reasons, supported by the record, for giving diminished weight to the VA rating. First, as noted above, although the ALJ interpreted plaintiff's short employment stints as unrelated to his impairments, the court finds the interpretation is unsupported, as plaintiff's marked social functioning clearly played a role. *Supra.* Second, the ALJ found that plaintiff's migraine headaches were severe at step two, so it was inconsistent for the ALJ to impugn the VA rating to the extent it credited plaintiff's "self-reported" migraines. (Tr. 29.) Third, as the Commissioner concedes, "the ALJ agreed [p]laintiff could not perform strenuous labor . . . ." Def.'s Br. 16; (Tr. 32).

The other reasons the ALJ provided for according the VA rating diminished weight are legally invalid: although the rating may be rejected to the extent the ALJ provides persuasive, specific, and valid reasons, here, the remaining rationales provided by the ALJ are applicable to *all* VA ratings, which is directly contrary to the holding in *McCartey*. In other words, if an ALJ could discount a VA rating because it did not consider the Paragraph B criteria, formulate an RFC, or contemplate prior or alternative work, all VA ratings could be readily rejected despite *McCartey*, and thus the exception would swallow the rule.[4] Therefore, the ALJ's finding was inadequate.

Moreover, the VA appeared to consider most of the Paragraph B criteria, provided a function-by-function analysis, and considered, at least, plaintiff's prior jobs. *See* (Tr. 334 (evaluating memory, attention, concentration, and social interaction), Tr. 338-341 (evaluating symptoms and functional effect of PTSD limitations), Tr. 343 (considering impact of impairments on prior work),

---

[4] The court acknowledges that the *McCartey* rule is no longer controlling for claims filed after March 27, 2017, based on new regulations. *See, e.g.*, *Underhill v. Berryhill*, 685 F. App'x 522, 524 n.1 (9th Cir. 2017). Nonetheless, the parties agree the *McCartey* rule is controlling in this case. *See* Def.'s Br. 15 n.1.

Tr. 347-380 (clinical objective testing and functional analysis of physical limitations)). The ALJ's evaluation of plaintiff's VA rating was erroneous.

III. Medical Opinion Evidence

Plaintiff argues the ALJ erroneously discredited portions of the medical opinion of consultative examining psychologist, Gregory A. Cole, Ph.D. An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

Dr. Cole performed a neuropsychological evaluation of plaintiff on July 9, 2016, and produced a report. (Tr. 548-559.) The doctor took a personal history from plaintiff and administered a battery of tests. The doctor diagnosed borderline intellectual functioning; PTSD; somatic symptom disorder with predominant pain, persistent and severe; unspecified anxiety disorder; nightmare disorder; intermittent explosive disorder; and mild neuro-cognitive disorder due to TBI, with

behavioral disturbance. (Tr. 555.) Dr. Cole assessed moderate difficulties in understanding, remembering, and carrying out complex tasks, marked difficulties in making judgments on complex work-related matters, marked difficulties in dealing with the public, supervisors, and coworkers, and marked difficulties in responding appropriately to normal work situations and changes in work routine. (Tr. 36, 555-56, 558.)

The ALJ accorded Dr. Cole's opinion partial weight, noting that the doctor relied heavily on plaintiff's self-reported symptoms, including significant social limitations, which were not supported by the record. (Tr. 36.) Plaintiff argues that although the ALJ incorporated Dr. Cole's opinion that plaintiff would have marked impairment in dealing with the public, the ALJ erred by failing to incorporate in the RFC Dr. Cole's opinion that plaintiff would also have marked impairment in interacting with coworkers and supervisors.

The Commissioner argues that the ALJ's assessment of Dr. Cole's opinion should be upheld for two reasons. First, the Commissioner maintains that the ALJ appropriately rejected Dr. Cole's opinion that plaintiff would have marked limitation in dealing with supervisors and coworkers because the opinion was based on plaintiff's self-reports, which were contradicted by his appropriate presentation at the consultative examination. However, the argument is unavailing because Dr. Cole's opinion that plaintiff had marked limitations in working with the public was adopted by the ALJ, despite its purported reliance on plaintiff's self-reports, and because at step two the ALJ explicitly found that plaintiff had marked limitations in social functioning. (Tr. 31, 35.)

The Commissioner also contends, somewhat paradoxically in light of the arguments above, that the ALJ properly included restrictions as to public, coworker, and supervisor interactions by limiting plaintiff to occasional contact with coworkers and supervisors. The ALJ, however, did not

explain why he apparently accorded greater weight to Dr. Cole's opinion regarding public contact by precluding public contact in the RFC, while according less weight to Dr. Cole's opinions regarding coworker and supervisor limitations, which were allowed on an occasional basis. The absence of an explanation is more puzzling considering that a reviewing agency physician indicated that plaintiff would require a "supportive supervisor," which the ALJ rejected because it was based "solely on the subjective statements of the claimant and his fiancée." (Tr. 36.) Thus, the record reflects that the ALJ found Dr. Cole's opinion of marked limitations in public contact supported by objective evidence, while finding Dr. Cole's opinion of marked limitations in coworker and supervisory contact wholly unsupported by the objective record. Thus, the ALJ's finding is internally inconsistent, and therefore does not meet either the specific-and-legitimate or clear-and-convincing legal standard.

Finally, the Commissioner argues that Dr. Cole never opined that plaintiff could never have any contact with coworkers. This misses the mark: the court is tasked with determining whether the ALJ's decision was based on the proper legal standards and based on substantial evidence. That is, the court must ensure that the ALJ did not arbitrarily reject relevant evidence to reach a non-disability conclusion. Here, the ALJ provided no explanation why she implicitly rejected Dr. Cole's assessment of plaintiff's social limitations regarding coworkers, whereas the ALJ adopted Dr. Cole's assessment regarding public contact by barring public contact in the RFC. In this context, the rejection of Dr. Cole's opinion regarding coworker interaction appears arbitrary. Remand is the appropriate remedy.

IV. Lay Witness

Testimony provided by lay witnesses must be considered by the ALJ in rendering a disability

decision. 20 C.F.R. § 404.1512(b)(4); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To discount otherwise competent lay testimony, the ALJ is required to give reasons germane to that witness. *Dodrill*, 12 F.3d at 919. However, where the ALJ provides legally sufficient reasons for rejecting a claimant's own symptom allegations, an ALJ's failure to provide germane reasons for rejecting similar testimony by a lay witness is harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

Plaintiff's fiancée, Ashley Carr, provided written testimony in support of plaintiff's disability claim. (Tr. 229-36.) Ms. Carr expressed that plaintiff is in constant pain, which effects many areas of his daily life, so much so that she believes he should use a cane when walking. She indicated that she assists him with almost all household tasks, from plaintiff's personal care to household chores. She further indicated plaintiff deals with stress poorly, and does not get along with authority figures, and avoids social activities as much as possible. The ALJ found Ms. Carr's statements inconsistent with the evidence of record, including the medical opinions and observations of "medical and mental specialists" of record. (Tr. 37.)

The ALJ's finding was inadequate, however, because it was impermissibly vague. The ALJ is required to provide more than a bare assertion that a lay witness' testimony is inconsistent with the medical record or other medical opinions. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Rather, the reasons proffered for rejecting such evidence must not only be germane, but specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Because the ALJ's proffered reasons for rejecting Ms. Carr's testimony amounts to little more than a boilerplate rejection, the ALJ erred.

## V. Invalid Hypothetical

Plaintiff argues that based on the ALJ's cumulative errors in rejecting his symptom testimony

and the testimony of Ms. Carr, as well as Dr. Cole's medical opinion, the ALJ fashioned an improper RFC and incomplete hypothetical questions to the VE. Based on the foregoing discussion of the ALJ's errors, the court concurs.

VI.  Remand for Benefits

Based on the ALJ's harmful errors in evaluating Dr. Cole, plaintiff's VA rating, and the testimony of Ms. Carr, this case must be remanded. The sole remaining issue is to determine whether to remand for further proceedings or for payment of benefits. The decision to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). While the typical course is to remand for further proceedings, the Ninth Circuit has repeatedly credited evidence as true when the ALJ failed to provide clear and convincing reasons for discounting the testimony of a plaintiff. *See, e.g.*, *Garrison*, 759 F.3d at 1022-23; *Orn*, 495 F.3d at 640; *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). A court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits" when the follow conditions are met: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are not outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the [plaintiff] disabled were such evidence credited." *Benecke*, 379 F.3d at 593.

The first prong of the inquiry is met based on the ALJ's errors. Therefore, the court must next determine if further proceedings are needed in order to properly address the errors, such as outstanding issues of fact that need to be resolved, and whether serious doubt remains regarding whether plaintiff is, in fact, disabled under the Act. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). The Commissioner argues that even assuming the ALJ erred,

further proceedings are needed to address the conflicting evidence provided by the VA and the opinions of the non-examining state agency physicians, and also the opinion of examining physician Dr. Henderson. However, the Commissioner does not identify how the VA findings conflicted with the non-examing physicians of record, aside from their ultimate conclusion that plaintiff could return to work. On the other hand, with respect to the symptoms of plaintiff's PTSD in particular, the reviewing psychiatrists' opinions were fairly consistent with plaintiff's own allegations, Ms. Carr's observations, and Dr. Cole's medical opinion: reviewing psychiatrist Ben G. Kessler, Psy.D., opined that plaintiff would require "a supportive, non-confrontational supervisor," and psychologist Bill Hennings, Ph.D., opined that plaintiff was limited to no public contact due to PTSD symptoms. (Tr. 89, 106.) Those limitations were consistent with plaintiff's own allegations, Ms. Carr's written testimony that plaintiff does not get along well with others, and supervisors in particular. (Tr. 68-69, 234.) The limitations are also fairly consistent with Dr. Cole's opinion that plaintiff's social functioning are not merely marked in terms of public contact, but also in terms of coworker and supervisory contact. (Tr. 558.) Finally, the ALJ herself determined that plaintiff's limitations in social functioning were marked, in part because plaintiff "reported significant difficulty getting along with coworkers and supervisors . . . angers easily, has undergone multiple physical altercations with others, and tried to stay away from people because he ha[s] difficulty dealing with them." (Tr. 31.)

Moreover, plaintiff's marked mental limitations were evident during the hearing. At one point, plaintiff indicated he was on the brink of exploding in anger, and the ALJ threatened to have a guard enter the room to protect the court reporter and VE. (Tr. 59-60.) The ALJ subsequently had to remind plaintiff on more than one occasion to focus and answer her questions rather than ranting tangentially. (Tr. 62, 64.) Plaintiff's apparent inability to respond appropriately to others was also

addressed by examining physician Mike Henderson, M.D., who noted tangential cognitive processes, although the doctor's examination was limited to musculoskeletal testing.[5] (Tr. 536-38.) Finally, the VA records reflect that plaintiff is substantially limited in establishing and maintaining relationships, impulse control, unprovoked irritability with periods of violence, extreme anger issues with supervisors, and therefore concluded plaintiff was severely limited in working with the public, coworkers, and supervisors. (Tr. 178-79, 337, 342.)

Based on all of the evidence discussed above, the court is satisfied that the record is fully developed regarding the extent of plaintiff's social functioning limitations related to his PTSD. Thus, the court finds it is appropriate to proceed to the third prong of the inquiry, which credits erroneously discredited evidence as true. Accordingly, the court fully credits Dr. Cole's medical opinion that plaintiff has marked limitation in interacting appropriately with the public, coworkers, supervisors, and responding appropriately to usual work situations and to changes in the routine. (Tr. 558.) The court further credits the lay testimony of Ms. Carr regarding plaintiff's interpersonal limitations and inability to handle stress, to the extent it is consistent with Dr. Cole's assessment. (Tr. 234-35). The Court further notes that Dr. Cole's fully credited opinion is consistent with Dr. Kessler's opinion that plaintiff would require a supportive, non-confrontational supervisor (Tr. 89), and Dr. Hennings' opinion that plaintiff is precluded from public contact at work (Tr. 106). Finally, Dr. Cole's report is consistent with the VA's assessment finding significant limitations in "interpersonal relatedness" working with the public, coworkers, and supervisors. (Tr. 342.)

At the hearing, the VE testified that a worker with the RFC set forth by the ALJ *could not*

---

[5] The court notes that Dr. Henderson opined that plaintiff amplified his pain symptoms based on inconsistent performance during the examination, which plaintiff does not directly contest.

perform any of the jobs identified at step five if the RFC included a limitation of no coworker contact. (Tr. 73.) The VE additionally testified that if "no coworker contact" was included in the RFC, there would be no competitive employment options available. *Id.* Considering the record as a whole, and fully crediting the erroneously discredited evidence regarding plaintiff's PTSD symptoms recited above, it is clear that the ALJ should have limited plaintiff to no coworker contact in addition to precluding him from public contact. Thus, based on the VE's testimony, the ALJ should have determined that plaintiff could not perform the jobs identified at step five, but instead deemed plaintiff disabled under the Act.

Although the court acknowledges the Commissioner's contention that Dr. Henderson's assessment suggested that plaintiff was exaggerating his physical symptoms, any ambiguity as to that issue does not warrant further proceedings because the PTSD symptoms discussed above direct a finding of disabled, regardless. Indeed, the court does not find that Dr. Henderson's opinion was erroneously rejected, and therefore does not disturb the ALJ's finding in that regard. Neither does the court disturb the ALJ's overall credibility finding, although the court notes that the ALJ did not provide any valid, clear-and-convincing rationales to impugn the veracity of plaintiff's alleged PTSD symptoms. Because plaintiff's impaired social functioning due to PTSD is dispositive of this matter, no useful purpose would be served by re-litigating plaintiff's physical symptom allegations in further proceedings. *Harman*, 211 F.3d at 1176.

*Conclusion*

For the reasons stated above, the ALJ's decision was not based on substantial evidence or

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

Page 21 - OPINION AND ORDER

free of harmful legal error.  Therefore, the Commissioner's decision is REVERSED and this case is REMANDED for immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 29th of May 2018.

JOHN V. ACOSTA
United States Magistrate Judge